IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-cv-02385-WYD-CBS

DR. WAYNE FURR, M.D.,

    Plaintiff,

v.

RALPH AGUILAR, individually;
ALAN KENT, individually; and
AGUILAR & SEBASTINELLI,

    Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Defendant Raul V. Aguilar, and Aguilar and Sebastinelli's Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (F.R.C.P. 12(b)(2); 12(b)(3); 28 U.S.C. § 1406(a)); or in the Alternative to Transfer for Improper Venue (28 U.S.C. § 1406(a)) or in the Alternative to Transfer For Convenience (28 U.S.C. § 1404(a)), filed December 20, 2004, and upon Defendant Allen J. Kent's similarly styled motion, filed April 6, 2005 (collectively referred to as "Defendants' Motion").[1]  Through their Motion, Defendants request that the case be dismissed for lack of personal jurisdiction and improper venue, or in the alternative, that the case be transferred to the Northern District of California, San Francisco Division, because of improper venue and convenience concerns.

---

[1] Since Defendants Aguilar, Aguilar and Sebastinelli, and Kent use almost identical language and make the same arguments in their respective motions, I refer to Defendants' arguments as if they were raised collectively in one motion.

**I.       Background to the Dispute**

This action arises out of Plaintiff's claims of legal malpractice, breach of fiduciary duty, and breach of contract brought against his former California attorneys and law firm in conjunction with their representation of Plaintiff in a California lawsuit in the Superior Court of California for Los Angeles County (the "underlying litigation").  *Gill v. Abbassi, et al.*, Civil Action No. BC 174420.  Compl., at 4.  The underlying litigation was brought against hundreds of doctors, including Plaintiff, Dr. Wayne Furr, M.D., who were involved with Physician Inter-indemnity Cooperative Corporation ("PICC") and Physicians Inter-indemnity Trust ("PIT") (collectively "PICC/PIT").  *Id.*, at 4-5.  The following facts of the underlying litigation are pertinent to the issue of personal jurisdiction raised by Defendants' Motion.

Pursuant to the California Insurance Code § 1280.7, PICC was formed to provide an alternative to malpractice insurance by allowing physicians to pool their financial resources into an inter-indemnity trust.  *Id.* at 5.  In connection with joining the PICC, each member signed a "physicians inter-indemnity trust agreement," forming the PIT.  Defs.' Mot., at 3.  Members such as Plaintiff paid initial contributions and assessments which were deposited into the PIT to cover defense and indemnity costs for medical malpractice lawsuits.  In September 1995, the PIT board of trustees terminated the PIT upon learning that an assessment of $32.5 million was necessary to replenish the trust fund and raise sufficient funds for defense and indemnity.  *Id.* at 4.  Thereafter, the PIT ceased providing coverage to members for future malpractice actions.  *Id.*

In March 1996, the Los Angeles Superior Court ordered the PICC/PIT into

receivership and appointed David Gill ("Gill") as receiver. *Id.* Upon determining the PICC/PIT held insufficient funds to cover debts and possible malpractice claims, Gill attempted to levy an assessment against the members, but only twenty (20) percent of the members responded. *Id.* In July 1997, Gill filed the underlying lawsuit, *Gill v. Abbassi*, in the Los Angeles County Superior Court against all members, including Plaintiff, to recover unpaid assessments totaling $51 million. Plaintiff initially retained a lawyer named Keith Rouse to represent his interest in the lawsuit, but terminated such relationship in "late 1999." Compl. at 6. On July 31, 1999,[2] Plaintiff entered into an attorney-client relationship with Defendant Aguilar & Sebastinelli, a law firm which already represented other defendant doctors in the underlying litigation.[3] Compl., at 6 ¶ 6.

Defendants thereafter assumed the responsibility of informing Plaintiff of the status of the case, any offers to settle and other matters raised in the action. Compl. at 7, ¶ 19. Such correspondence occurred via telephone from Aguilar & Sebastinelli's main office is in San Francisco, California and from its only other office located in Los Angeles, California. Ex. B to Defs.' Mot., Sebastinelli Decl. at 2. At the time Plaintiff established the attorney-client relationship with Defendants, Plaintiff resided in Castle

---

[2]The Agreement for Performance of Legal Services, attached as Exhibit X to Plaintiff's Amended Response to Defendants' Motion, filed May 5, 2005, was signed by Plaintiff and Defendants on July 31, 1999 and August 2, 1999, respectively.

[3]According to Defendants, Aguilar & Sebastinelli "represented approximately 300 members" of PICC/PIT, while other law firms represented the balance of the nearly 300 doctors sued by the receiver. Defs.' Mot. at 4.

Rock, Colorado.[4]

On November 17, 2004, Plaintiff filed this action alleging Defendants committed legal malpractice while representing him in the underlying litigation by erroneously interpreting the offer to settle and advising Plaintiff that the proposed settlement would not provide a release to Dr. Furr regarding future liability. Plaintiff asserts that had Defendants properly advised Plaintiff about the mutual release, he would have accepted the offer to settle and, thus, would have owed $80,841.07 less to the receiver. The Court asserts subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity of citizenship.

**II.     Analysis**

**(a)     Whether This Court has Personal Jurisdiction Over Defendants**

Plaintiff bears the burden of establishing personal jurisdiction over the Defendants. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). To satisfy this burden and defeat a motion to dismiss for lack of personal jurisdiction, Plaintiff need only make a *prima facie* case of personal jurisdiction. *See GCI 1985-1 Ltd. v. Murray Properties Partnership*, 770 F.Supp. 585, 587 (D.Colo.

---

[4]The parties make contradictory assertions as to the location of Plaintiff's residence during Defendants' representation of Plaintiff in the underlying litigation. Defendants repeatedly state, "at the time plaintiff retained defendants, plaintiff apparently maintained a residence and received mail at an address in Pasadena California." Defs.' Mot. at 7. In making this assertion, Defendants merely cite to Mr. Sebastinelli's Declaration. In contrast, Plaintiff asserts that he has been a Colorado resident "since the inception of the *Gill v. Abbassi* action," which, the Court notes, began in July 1997. Pl.'s Resp. at 3. To support his claim, Plaintiff points to his handwritten Colorado address which appears below his signature on the "Agreement for Performance of Legal Services." Pl.'s Am. Resp., Ex. X at 4. Plaintiff also attaches a check for payment of $9,000 to Aguilar & Sebastinelli, which is dated September 25, 1999 and contains a Castle Rock, Colorado address under Plaintiff's name. *Id.*, Ex. Y. For purposes of this Order, I find Plaintiff was a Colorado resident as of the date the Agreement for Legal Services was signed by the parties on August 2, 1999.

4

1991).  To this effect, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits[,] [and] [i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.* at 587 (citations omitted).

On a motion to dismiss, the Court must engage in a two-step analysis to determine whether personal jurisdiction exists.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507 (10th Cir. 1995).  The Court "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law . . . and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution."  *Id.* at 1506-07 (citations omitted).  Because the Colorado Supreme Court has construed Colorado's long-arm statute as allowing personal jurisdiction to the full extent permitted under federal law, *see Safari Outfitters v. Superior Court*, 167 Colo. 456, 448 P.2d 783, 784 (1968), "[our] analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over [the Defendants] comports with due process."  *National Bus. Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F.Supp.2d 1250, 1253 (D.Colo. 2000) (*aff'd* No. 00-1411, 2001 WL 912796 (10th Cir. Aug. 14, 2001)).

"'[D]ue process requires only that. . . [the Defendants] have certain minimum contacts with [Colorado] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945).  Critical to the due process analysis "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Id.*  (quotations omitted).  The reasonable anticipation requirement is satisfied if the defendant has engaged in "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The "minimum contacts" standard may be met in two ways: through showing the existence of either specific jurisdiction or general jurisdiction.  *Trierweiler*, 90 F.3d at 1532.  I first find that Plaintiff has not demonstrated that the exercise of general jurisdiction over Defendants is appropriate, since he has not demonstrated that they have "continuous and systematic" contacts with Colorado.  *See OMI Holdings*, 149 F.3d at 1091.  Thus, I turn to the issue of specific jurisdiction.

Specific jurisdiction exists over a nonresident defendant "'if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'"  *OMI Holdings, Inc.*, 149 F.3d at 1090-91 (internal citations omitted).  The specific jurisdiction inquiry is two-fold.  *Id.*  "First, we must determine whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'"  *Id.* at 1091 (internal citations omitted).  "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum . . . and whether the plaintiff's claim arises out of or results from 'actions by the defendant

6

*himself* that create a substantial connection with the forum state.'" *Id.* (citations omitted, emphasis in original). "Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* "This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id.*

Here, to establish its claim that Defendants have minimum contacts with Colorado, Plaintiff asserts that Defendants "purposely availed themselves of the benefit of the State of Colorado" by reaching out to Plaintiff, a Colorado resident, and representing him in the underlying litigation for a period of years. Pl.'s Resp., at 3. Plaintiff further argues that Defendants "deliberately created a continuing obligation" between Defendants and Plaintiff by "routinely correspond[ing] with Plaintiff via US Mail and telephonically in Colorado" from December 10, 1999 through March 17, 2004.[5] In addition to the routine correspondence, Plaintiff claims Defendants mailed written demands to Plaintiff in Colorado for payment of fees regarding the underlying representation. Pl.'s Resp., at 4. Plaintiff also claims that this action is properly brought in Colorado because "the injury proximately caused by the tortious breach of duty of care" was suffered by Plaintiff in Colorado. Pl.'s Resp., at 8.

---

[5]Attached to Plaintiff's Response are exhibits 1 through 20 which illustrate the type of correspondence the parties maintained during that time. Among the exhibits are various letters from Defendants which generally informed Plaintiff of the status of the underlying litigation, and on two occasions directed Plaintiff to verify form interrogatories and responses to discovery that were to be submitted on his behalf.

7

In support his his claims, Plaintiff relies on *Keefe v. Kirschenbaum & Kirschenbaum*, wherein the Supreme Court of Colorado found personal jurisdiction was proper in Colorado over a New York law firm because a lawyer from the firm "deliberately accepted the responsibility of representing a Colorado client." 40 P.3d 1267, 1272 (Colo. 2002). Plaintiff claims that personal jurisdiction is proper in this action because Defendant law firm, Aguilar & Sebastinelli, acted similarly to the law firm in *Keefe*, which entered into an attorney-client relationship with the plaintiff resident of the forum state, represented that plaintiff for a period of eleven years, and demanded and received payment for services in connection with that representation. *Id.*

Upon my review of the record before me, I find merit in Plaintiff's argument and that this Court has specific jurisdiction over Defendants. Applying the two-part test set forth in *OMI Holdings, Inc.* to the facts of the case at bar, I find that Defendants have minimum contacts with Colorado as they have purposefully directed activities at a Colorado resident. I find it significant that at the time Defendant law firm, Aguilar & Sebastinelli, signed the Agreement for Performance of Legal Services with Plaintiff, Defendants knew, or should have known, they were engaging in the representation of a Colorado resident. Clearly, where Plaintiff handwrites his forum-state address below the line where his signature appears on the legal agreement that was drafted and signed by Defendants, the latter should "have a fair warning that a particular activity may subject them to the jurisdiction" of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). I further find the fact that Aguilar & Sebastinelli did not initially take actions to procure Dr. Furr as a client is irrelevant to the

Court's minimum contacts analysis since the firm ultimately accepted the responsibility of representing a Colorado client. It also bears emphasizing that this Court is substantially influenced by the decision in *Keefe*, wherein the Colorado Supreme Court held that an out of state law firm established minimum contacts in Colorado by entering into an attorney-client relationship with the plaintiff.[6]  *See Keefe*, 40 P.3d at 1272.

Turning to the issue of whether Plaintiff's claims arise out of or result from Defendants' actions, I find there is a "substantial connection" between the Defendants and the forum state. *OMI Holdings, Inc.*, 149 F.3d at 1091. Here, I find Defendants' alleged tortious conduct in failing to properly inform Plaintiff about the settlement offer caused injury to Plaintiff who was residing in Colorado.

Having found the first prong of the specific jurisdiction inquiry is met and Defendants' actions created sufficient minimum contacts with Colorado, I also find any exercise of personal jurisdiction by this Court over the Defendants would not offend "traditional notions of fair play and substantial justice" and would be "reasonable in light of the circumstances surrounding the case." *OMI Holdings, Inc.*, 149 F.3d at 1091. Defendants' representation of Plaintiff during the underlying litigation involved activities purposefully directed at an individual they knew to be a resident in this State. Accordingly, I find Defendants' Motion should be dismissed to the extent it requests this Court dismiss this action for lack of personal jurisdiction.

---

[6]Although Defendants cite to federal cases from other states within the Tenth Circuit, they do not cite to a case from the United States District Court for the District of Colorado that is so closely on point.

### (b)     Whether Venue is Proper in Colorado

Defendants next assert, in the alternative, that this case should be either dismissed or transferred for improper venue under 28 U.S.C. § 1406(a).[7]  Specifically, Defendants assert that under the relevant portions of 28 U.S.C. 1391(a), this civil action is improper in Colorado because "a substantial part of the events or omissions giving rise to the claim occurred..." in the forum state.  *See* 28 U.S.C. 1391(a)(2).  Although Defendants have properly framed the issue, I disagree with their conclusion.  For the same reasoning supporting the Court's finding that Defendants have minimum contacts in the forum state, I find that venue is proper in Colorado.[8]  Accordingly, I find Defendants' Motion should be dismissed to the extent it requests this Court dismiss or transfer this action for improper venue.

### (c)     Whether Change of Venue is Appropriate

Defendants assert, in the alternative, that this Court should exercise its discretion and transfer this case to California out of concerns regarding convenience to Defendants and to potential witnesses in this action.  Mot. at 9.  Plaintiff disagrees with this claim, stating that the Court should honor his choice of forum and that it is "more inconvenient for Plaintiff to travel to California that it may be for the Defendants to travel to Colorado."  Resp. at 13.  Plaintiff further contends that in the "interest of justice," this

---

[7] 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[8] I find the *Wormuth v. Aguilar, et al.*, Case No. C 03–03943 VRW BZ, cited by Defendants as an example of a related case, is not helpful to this Court's venue analysis, as that case involved a motion to transfer venue, which was *uncontested* by the plaintiff.

action should not be transferred to California because the statute of limitations for legal malpractice claims has expired under California law. *Id.* at 13-14.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Congress enacted the statute "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)). Although Congress drafted section 1404(a) in accordance with the doctrine of forum non conveniens, "the statute was intended to revise rather than merely codify the common law." *Id.* District courts therefore enjoy greater discretion to transfer a case pursuant to section 1404(a) than to dismiss the action based upon the forum non conveniens doctrine. *Id.* The moving party bears the burden of demonstrating that the existing forum is inconvenient. *Id.*

The decision whether to transfer an action lies within the sound discretion of the trial judge. *See Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978). In exercising that discretion, the Court must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler*, 928 F.2d at 1516 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Among the factors a district court should consider are: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure

attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment; (5) the relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other practical considerations that make a trial easy, expeditious and economical. *Id.* (citation omitted).

In this case, the Plaintiff has selected Colorado as its forum of choice, and as previously set forth, Plaintiff's choice of forum is afforded substantial deference. However, I agree with Defendants that this factor is entitled to less weight when the case's operative facts have no connection with the forum, as here. *See Alden Corp. v. Eazypower Corp.*, NO. CIV.A.303CV1257JCH, 2003 WL 22889014 at *4 (D. Conn. 2003); *Mitsui Marine and Fire Ins. Co. Ltd. v. Nankai*, 245 F. Supp. 2d 523, 525 (S.D.N.Y. 2003); *Peters v. Graber Industries, Inc.*, No. CIV.A.91-1507-Bb, 1992 WL 420915 at *3 (D. Kan. 1992). The only connection between this case and the forum state is that Plaintiff currently resides in Colorado. Thus, I find this factor is not controlling.

As to factors relating to the convenience of the parties and witnesses, I find Defendants have the stronger argument. The vast majority of potential witnesses in this action, namely the individual defendants, Mr. Kent and Mr. Aguilar, as well as Mr. Sebastinelli, and Mr. Gill, the receiver in the underlying litigation, live in California. As a result, the cost of making the necessary proof is less expensive in California. I further find that since the underlying litigation involved a California tax law and the legal

malpractice claim arose from a relationship entered into in California, it would be advantageous for a local court in California to hear the case. As to the remaining factors, I find that they are essentially neutral and do not favor either jurisdiction.[9]

Weighing all the factors discussed above, I find Defendants' Motion should be granted to the extent it requests this Court transfer this action to California for convenience reasons.

### III.     Conclusion

Based upon the foregoing, it is

ORDERED that Defendant Raul V. Aguilar, and Aguilar and Sebastinelli's Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (F.R.C.P. 12(b)(2); 12(b)(3); 28 U.S.C. § 1406(a)); or in the Alternative to Transfer for Improper Venue (28 U.S.C. § 1406(a)) or in the Alternative to Transfer For Convenience (28 U.S.C. § 1404(a)), filed December 20, 2004, and Defendant Allen J. Kent's similarly styled motion, filed April 6, 2005 (collectively "Defendants' Motions"), are **GRANTED IN PART AND DENIED IN PART**. Defendants' Motions are **DENIED** to the extent they request this action be dismissed for lack of personal jurisdiction and to the extent they request this action be dismissed or transferred for improper venue. Defendants' Motions are **GRANTED** to the extent they request this action be transferred to California for convenience. In accordance with the foregoing, it is

ORDERED that the Clerk of the Court is **DIRECTED TO TRANSFER** this action to the United States District Court for the Northern District of California, San Francisco

---

[9] I also find Plaintiff's argument, that this case should not be transferred because the statute of limitations for a legal malpractice claim in California has run, is without merit.

Division.

Dated:  July 28, 2005

                                              BY THE COURT:

                                              s/ Wiley Y. Daniel
                                              Wiley Y. Daniel
                                              U. S. District Judge